NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | Civ. No. 07-1447 (GEB) |
| : | |
| v. : | |
| : | |
| JOHN T. BOURGER, : | **MEMORANDUM OPINION** |
| : | |
| Defendant. : | |

**BROWN, Chief District Judge**

  This matter comes before the Court upon the following two motions **(1-2**, below**)** filed by the parties:

  **(1)** motion for summary judgment of the United States of America (the "Government") filed pursuant to Federal Rule of Civil Procedure 56 [DOCKET # 20];

  **(2)** motion for partial summary judgment of John T. Bourger ("Defendant") also filed pursuant to FED. R. CIV. P. 56 [DOCKET # 21].

  The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to FED. R. CIV. P. 78. For the reasons set forth below, the Court will: (1) grant in part and deny in part the Government's motion, and; (2) deny Defendant's motion.

**I. BACKGROUND**

  In the present action, brought pursuant to 26 U.S.C. §§ 7401 and 7402(a), the Government seeks to reduce to judgment federal tax assessments against Defendant for the years

1995, 1996 and 1997. (Pl.'s Compl. ¶ 1.) On October 15, 1996, Defendant filed an I.R.S. Form 1040 ("1040") in which he reported $199,016 of income tax due for the year 1995. (Pl.'s Mot. Summ. J. Ex. A ("1995 Cert. of Assessment") at 2.) The I.R.S. assessed that amount of income tax against Defendant on November 28, 1996. (*Id.*) On October 20, 1997, Defendant filed a 1040 in which he reported $45,218 of income tax due for the year 1996. (Pl.'s Mot. Summ. J. Ex. B ("1996 Cert. of Assessment") at 2.) The I.R.S. assessed that amount of income tax against Defendant on December 1, 1997. (*Id.*) On November 5, 1998, Defendant filed a 1040 in which he reported $81,443 of income tax due for the year 1997. (Pl.'s Mot. Summ. J. Ex. C ("1997 Cert. of Assessment") at 7.) The I.R.S. assessed that amount of income tax against Defendant on December 7, 1998. (*Id.*) It is undisputed that Defendant has failed to pay in full his self-assessed tax liability for those years.

In an effort to settle with the Government, Defendant filed a Form 656 Offer in Compromise ("OIC") which was received by the Internal Revenue Service on March 14, 2003. (Def.'s Mot. Part. Summ. J. Ex. B ("OIC") at 1.) In his OIC, Defendant stated that he had "insufficient assets and income to pay the full amount [of his income tax liability]." (*Id.*) Defendant then offered to pay the Government a total of $318,000 (via 106 monthly installment payments of $3,000), in exchange for the elimination of his income tax liability. (*Id.*) In a letter sent to the Defendant dated March 31, 2003, the Government confirmed they had received Defendant's OIC, informed Defendant that an "offer examiner" would contact him, and provided Defendant with contact information in the event he had any questions. (Pl.'s Mot. Summ. J. Ex. D; Def.'s Mot. Part. Summ. J. Ex. C) It is unclear whether Defendant and the Government communicated further regarding the OIC after that letter was sent.

On September 8, 2003, the Government rejected Defendant's OIC and returned it to him. One hundred sixty one (161) days passed between March 31, 2003, the date upon which the Government asserts Defendant OIC became "pending," and September 8, 2003, the date Defendant's OIC was rejected. (Def.'s Opp'n Br. at 5.) The OIC Defendant received back from the Government bore the following two stamps: (1) "RECEIVED March 14, 2003," and; (2) "RETURNED" with the handwritten date September 8, 2003. (Def.'s Mot. Part. Summ. J. Ex. B ("OIC") at 1.) Importantly, the OIC returned to Defendant bore no signature in the space marked "Signature of Authorized Internal Revenue Service Official" on the final page of the document. (*Id.* at 4.) Despite several written requests by Defendant's counsel, the Government has failed to produce a copy of Defendant's OIC that bears the signature of an I.R.S. official. The Government has, however, provided the declaration of Vonice Gibbs, a manager in the I.R.S.'s Offer in Compromise Group. (Pl.'s Mot. Summ. J. ("Gibbs Declaration") at ¶ 2.) Ms. Gibbs declares that Defendant's OIC was pending (accepted for processing) as of March 31, 2004, but that the I.R.S. has been unable to retrieve its retained copy of Defendant's OIC. (*Id.* at ¶¶ 3,5.)

Since Defendant's OIC was rejected by the Government on September 8, 2003, it appears that Defendant has made no payments to the I.R.S. in any amount. (Pl.'s Mot. Summ. J. Ex. A ("1995 Cert. of Assessment")); (Pl.'s Mot. Summ. J. Ex. B ("1996 Cert. of Assessment")); (Pl.'s Mot. Summ. J. Ex. C ("1997 Cert. of Assessment"))  As a result, the I.R.S. has periodically augmented Defendant's liability with accrued interest and penalties. The Government asserts that as of February 4, 2008, Defendant's total income tax liability for the years 1995, 1996 and 1997 is $904,403. (Pl.'s Mot. Summ. J. Br. at 2.) The Government has moved for summary judgment as to the Defendant's income tax liability for those years, and seeks relief in that

amount. (Pl.'s Mot. Summ. J.)  In its submissions to this Court, the Government asserts that the applicable statute of limitations was tolled for 161 days, the time Defendant's OIC was allegedly "pending," and that its initiation of this action on March 28, 2007 was timely.  The Government argues that there are no material issues of fact in this case, and that Defendant's income tax liability should be reduced to judgment.

Defendant both opposes the Government's motion, and moves for partial summary judgment on the issue of his 1995 income tax liability.  (Def.'s Mot. Part. Summ. J.; Def.'s Opp'n Br.)  The question of whether Defendant's OIC was signed by an I.R.S. official is central to the disposition of the motions at bar.  In his motion for partial summary judgment, Defendant asserts that an authorized I.R.S. agent never signed his OIC.  (Def.'s Mot. Part. Summ. J.)  Defendant claims that, as a result of this omission, his OIC was never "pending" and, therefore, the statute of limitations on the Government's ability to reduce his 1995 tax liability to judgment was never tolled.  (*Id.*)  Defendant asserts that, because the statute of limitations was never tolled, the Government's action had to be initiated on November 18, 2006, ten years after the I.R.S. assessed Defendant's 1995 income tax liability.  (*Id.*)  Defendant argues that, because the Government did not file its complaint until March 28, 2007, the Government's action is time-barred regarding his 1995 income tax liability.  (*Id.*)  In the alternative, Defendant argues that there is a material issue of fact as to whether his OIC was properly signed and the statute of limitations tolled.  (Def.'s Opp'n Br.)  Additionally, Defendant claims that there are material issues of fact as to the Government's calculation of interest and penalties that render summary judgment for the Government inappropriate.  (*Id.*)

**II.    DISCUSSION**

### A. Legal Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### B. Application

#### 1. Summary Judgment Denied To Both Parties On The Issue Of Defendant's 1995 Income Tax Liability

Both parties seek summary judgment on the issue of Defendant's income tax liability for the year 1995. Defendant claims that, because the Government has produced no copy of his OIC bearing the signature of an authorized I.R.S. agent, Defendant's OIC was never "pending," the statute of limitations was never tolled, and the Government's action is time-barred as to his 1995 income tax liability. In the alternative, Defendant argues that the question of whether an I.R.S. agent signed his OIC presents a genuine issue of material fact that precludes summary judgment for either party on this issue at this stage of litigation. The Government, conversely, argues that

the absence of a signed OIC presents no genuine issue of material fact and that Defendant's 1995 income tax liability is ripe for summary judgment.

The Defendant correctly notes that 26 U.S.C. § 6502 establishes a ten year statute of limitations for actions in which the Government seeks to collect unpaid income taxes via levy or judicial proceeding. Despite this general ten year limit, the taxpayer and the Government may agree to extend the statutory ten year collection period. 26 U.S.C. § 6502(a)(2). This situation arises when the taxpayer files an I.R.S. Form 656 ("Form 656") Offer In Compromise ("OIC"), that is accepted by the I.R.S. for processing. Item 8, subsection (e) of the standard Form 656 specifically states that by signing the OIC, the taxpayer "waive[s] and agree[s] to the suspension of any statutory periods of limitation (time limits provided for by the law) for the IRS assessment of the tax liability . . . ." The final page of Form 656 contains spaces for two signatures. The first signature is that of the taxpayer. The second signature is that of an "Authorized Internal Revenue Service Official." Form 656 makes clear that, by signing the document, the authorized IRS official "accept[s] the waiver of the statutory period of limitations for the Internal Revenue Service." Form 656, Item 8, subsection (m) states that once the authorized I.R.S. agent signs the form, the taxpayer's OIC is "pending," and that the "[OIC] remains pending until an authorized IRS official accepts, rejects, returns or acknowledges the withdrawal of the offer in writing."

The importance of the authorized I.R.S. official's signature and the status of the OIC as "pending" is established in I.R.S. Revenue Procedure 2003-71 (2003), Section 5.01 which states:

> [26 U.S.C. § 6331(k)(1)] generally prohibits the Service from making a levy on a taxpayer's property or rights to property while an offer to compromise a liability is pending with the Service, for 30 days after the rejection of an offer to compromise, or while an appeal of a rejection is pending. *The statute of limitations on collection is suspended while levy is prohibited. An offer to*

> *compromise becomes pending when it is accepted for processing.* (emphasis added)

I.R.S. Revenue Procedure 2003-71 (2003), Section 5.02 continues:

> *A determination is made to accept an offer to compromise for processing when a Service official with delegated authority to accept an offer for processing signs the Form 656.* The date the Service official signs the Form 656 is recorded on the Service's computers. (emphasis added).

Based upon the authority noted above, it is absolutely clear that the signature of an authorized I.R.S. official is a critical step in the OIC acceptance process. In order for the statute of limitations established in 26 U.S.C. § 6502 to be tolled, the status of the taxpayer's OIC must be "pending." In order for an OIC to be "pending," it must be "accepted for processing." I.R.S. Revenue Procedure 2003-71 (2003), Section 5.02 explicitly states that "A determination is made to accept an offer to compromise for processing when a Service official with delegated authority to accept an offer for processing *signs* the Form 656." (emphasis added)

An application of this authority to the facts of this case plainly reveals a genuine issue of material fact as to whether Defendant's OIC was ever properly signed and "accepted for processing" by the I.R.S.. Defendant has submitted the OIC that was returned to him by the I.R.S.. (Def.'s Mot. Part. Summ. J. Ex. B ("OIC"))  As noted previously, that OIC bears several I.R.S. stamps, and the handwritten date on which Defendant's OIC was rejected. While that OIC bears Defendant's signature, the space reserved for the "Signature of Authorized Internal Revenue Service Official" is blank. (Def.'s Mot. Part. Summ. J. Ex. B ("OIC") at 3.)  Counsel for Defendant has specifically requested that the Government produce a copy of the OIC that was duly signed by an authorized I.R.S. official. (Def.'s Opp'n Br. Ex. 3 ("Discovery Letter") at 2.) The I.R.S. has failed to produce this document. Instead, the Government has submitted the

7

Declaration of Vonice Gibbs, Group Manager of the I.R.S.'s Offer In Compromise Group in Plantation, Florida.  (Pl.'s Mot. Summ. J. ("Gibbs Declaration"))  In her Declaration, Ms. Gibbs states that Defendant's OIC was "accepted for processing on March 31, 2003." (*Id.* at ¶ 3.)  Ms. Gibbs also states that "the Internal Revenue Service has been unable to retrieve the retained copy of the offer in compromise."  (*Id.* at ¶ 5.)  While Ms. Gibbs explicitly states that the I.R.S.'s copy of Defendant's OIC has not been retrieved, she conspicuously fails to state that the retained OIC, or any copy thereof, was ever signed by an authorized I.R.S. agent.

The Government puts forth various arguments as to why the lack of a signed OIC does not present a genuine issue of material fact in this case.  None of those arguments justifies summary judgment for the Government on the issue of Defendant's 1995 income tax liability.  First, the Government argues that Defendant has "failed to submit any facts supporting his conclusion that the Service never accepted his OIC for processing." (Pl.'s Opp'n Br. at 5.)  The record before this Court does not support that argument.  The following three aspects of the parties' submissions present an issue of fact as to the I.R.S.'s proper acceptance of the Defendant's OIC: (1) the OIC returned to Defendant which bore no authorized I.R.S. agent's signature (Def.'s Mot. Part. Summ. J. Ex. B ("OIC")); (2) documentation that Defendant's counsel has repeatedly requested that the Government provide a signed OIC, and the Government's failure to do so (Def.'s Opp'n Br. Ex. 3 ("Discovery Letter") at 2.); (3) the Declaration of I.R.S. Manager Vonice Gibbs, in which she fails to state that Defendant's OIC was ever signed (Pl.'s Mot. Summ. J. ("Gibbs Declaration")).  Taken together, these submissions create a genuine issue of material fact as to whether Defendant's OIC was ever signed, as the I.R.S. regulations demand for an OIC to be accepted for processing.

These documents also defeat the Government's additional contention that the presumption of regularity ascribed to a Government employee's official duties renders summary judgment appropriate for the Government. The Government correctly notes that "agents of the United States are entitled to a presumption of regularity. It is presumed that the agents of the United States have properly discharged their official duties." (Pl.'s Opp'n Br. at 7.) *Citing Petrelle v. Weirton Steel Corp.*, 953 F.2d 148, 153 (4th Cir. 1991); *United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926). Specifically, the *Petrelle* court stated that, "This presumption [of regularity] 'supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Petrelle* at 153, *citing United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926).

Despite the presumption of regularity accorded to the I.R.S. in this case, the Defendant has presented sufficient "clear evidence" to rebut that presumption at this stage of litigation. Defendant seeks to rebut the presumption that an I.R.S. official signed, and therefore properly accepted, his OIC. Here, the Defendant has produced as evidence the unsigned OIC returned to him by the Government, as well as a copy of his counsel's repeated requests that the Government provide a signed copy. The Government claims their retained copy of the OIC has not been retrieved. If this Court required the Defendant to produce additional evidence to rebut the Government's presumption of regularity under these circumstances, that requirement would essentially create an irrebuttable presumption in favor of the I.R.S.. That is not the rule established in *Petrelle* and *Chemical Found.*.

The cases cited by the Government in support of its motion for summary judgment are unavailing, and support this Court's denial of summary judgment to both parties on the issue of

9

Defendant's 1995 income tax liability. One case, in particular, merits detailed discussion. In *United States v. McGaughey*, no. 90-3475 (WDS), 1991 WL 474685 (S.D. Ill. Apr. 1, 1991), the court granted summary judgment to the Government where the defendant taxpayer's OIC was not produced because it had been destroyed as part of a routine liquidation of older documents by the I.R.S.. The *McGaughey* court relied upon Federal Rule of Evidence 1004, and allowed the Government to prove the contents of the original, destroyed OIC through secondary evidence. In *McGaughey*, the court noted:

> [The Government] presented sworn affidavits of I.R.S. employees attesting to standard procedures of the I.R.S. with regard to a submission of an 'offer in compromise.' The evidence establishes that I.R.S. procedures mandate that the taxpayer sign the Form 656, which contains a standard waiver of the statue of limitations, and that the I.R.S. will not consider the offer unless the taxpayer has signed the form. Even then, the form is not effective until accepted by the I.R.S. by signature. Based upon the undisputed evidence presented by the I.R.S. of the safeguards it uses to insure that Form 656 is properly completed before the offer is considered, the government has met its burden of proof.

*McGaughey* at 9.

The case at bar is different from *McGaughey* in several important respects. First, in *McGaughey*, it appears that neither party was able to reproduce a copy of the taxpayer's OIC. Here, Defendant has produced the OIC he received back from the I.R.S., which bears several official I.R.S. stamps, but lacks an authorized agent's signature. Moreover, in *McGaughey*, the court apparently relied heavily on "sworn affidavits of I.R.S. employees attesting to standard procedures of the I.R.S. with regard to a submission of an 'offer in compromise.'" Based upon those affidavits, the *McGaughey* court was convinced that sufficient procedural "safeguards" were in place to insure the I.R.S. properly accepted the defendant taxpayer's missing OIC. No such affidavits evidencing I.R.S. procedural "safeguards" are before this Court in this case. The

Government has provided the Declaration of Vonice Gibbs, a manager in the I.R.S.'s Offer in Compromise Group. (Pl.'s Mot. Summ. J. ("Gibbs Declaration")) That affidavit, which is a scant five paragraphs long, states only that Defendant's OIC was "accepted for processing," and that the I.R.S. "has been unable to retrieve the retained copy of the offer in compromise." (*Id.* at ¶¶ 3, 5.) As the Court has noted, Ms. Gibbs does not state whether Defendant's OIC was ever signed by an authorized I.R.S. agent. In short, unlike the court in *McGaughey*, this Court does not have sufficient evidence of standardized I.R.S. procedures to determine, pursuant to FED. R. EVID. 1004, that the Defendant's OIC was signed.

In sum, the parties submissions to this Court create a genuine issue of material fact as to whether the Defendant's OIC was ever signed, and therefore properly accepted, by an authorized I.R.S. agent. The codified I.R.S. procedures governing the acceptance of Form 656 OIC's clearly indicate that an authorized I.R.S. agent's signature is a critical step in the acceptance process. If the Defendant's OIC was not properly accepted for processing, the statute of limitations was not tolled. If the statute of limitations was not tolled, the Government's action to reduce Defendant's 1995 income tax liability is time-barred. As such, summary judgment for either party on the issue of Defendant's 1995 income tax liability is inappropriate at this time.

### 2. Summary Judgment Is Granted To The Government Regarding Defendants Income Tax Liability For 1996 and 1997, And The Numerical Correctness Of Defendant's 1995 Income Tax Assessment, Penalties And Accrued Interest

The Government moves for summary judgment on the issue of Defendant's income tax liability for the years 1996 and 1997.[1] (Pl.'s Mot. Summ. J.) The Government has also argued

---

[1] Defendant appropriately does not challenge the timeliness of the Government's suit for the years 1996 and 1997. The Government assessed Defendant's 1996 income tax on

that there are no genuine issues of material fact regarding the correctness of Defendant's 1995 Certificate of Assessment, penalties and accrued interest. (*Id.*) Defendant opposes the Government's motion, and argues that there are genuine issues of material fact regarding the Government's assessment of interest and penalties against Defendant for those years. (Def.'s Opp'n Br.) A thorough review of the record reveals no genuine issue of material fact regarding the Certificates of Assessment, penalties and accrued interest against Defendant for the years 1995, 1996 and 1997, and no genuine issue of material fact regarding Defendant's income tax liability for the years 1996 and 1997. The Court will therefore grant the Government's motion for summary judgment on those issues.

The parties agree that I.R.S. Certificates of Assessment are entitled to a presumption of correctness. *Freck v. Internal Revenue Service*, 37 F.3d 986, 991-92 n.8 (3d Cir. 1994). The parties also agree that once the presumption of correctness attaching to the Certificates of Assessment is established, the burden of production and persuasion shifts to the Defendant to show that there are errors in the Certificates of Assessment. *Psaty v. United States*, 442 F.2d 1154, 1159-1160 (3d. Cir. 1971).

Applying this law to the submissions of the parties in this case, the Defendant has failed to raise a genuine issue of material fact as to the correctness of the Government's assessment of tax, interest, or penalties against him for the years 1995, 1996 and 1997. It is undisputed that the Government has produced Certificates of Assessment for each of these three years. (Pl.'s Mot. Summ. J. Ex. A ("1995 Cert. of Assessment")); (Pl.'s Mot. Summ. J. Ex. B (("1996 Cert.

---

December 1, 1997, and his 1997 income tax on December 7, 1998. As such, the Government's commencement of this action on March 27, 2007 was within the ten-year statute of limitations for Defendant's 1996 and 1997 tax liability.

of Assessment")); (Pl.'s Mot. Summ. J. Ex. C ("1997 Cert. of Assessment"))  These Certificates are presumed correct.  In order to overcome that presumption, the Defendant needs to produce some evidence that these Certificates are incorrect.  Defendant has utterly failed to do so.  A thorough review of the Defendant's submissions, particularly his Opposition Brief, yields nothing more than speculative and often irrelevant arguments regarding alleged errors in the Certificates of Assessment.  Indeed, Defendant does nothing more than cherry-pick various line-items on the Certificates of Assessment that he claims are erroneous, without more.  Given the well established presumption of correctness attributed to Certificates of Assessment, which, in this case, are based upon the tax returns Defendant himself filed, the Court is persuaded that there are no genuine issues of material fact as to the correctness of the Government's assessment of tax, interest, or penalties against him for the years 1995, 1996 and 1997.  Furthermore, given the Defendant's failure to identify a genuine issue of material fact based upon the ample discovery documents provided to him by the I.R.S., the Court agrees with the Government that further discovery in this case would be a waste of time and resources.

      In sum, the Defendant has failed to overcome the presumption of correctness accorded to the Certificates of Assessment provided by the Government for the years 1995, 1996 and 1997.  As such, this Court will enter summary judgment on behalf of the Government for the Defendant's 1996 and 1997 income tax liability.  This Court will also enter summary judgment for the Government on the issue of the correctness of the Defendant's 1995 Certificate of Assessment, penalties and accrued interest.

### III.   CONCLUSION

      For the reasons set forth above, the court will rule as follows: (1) the Defendant's motion

for partial summary judgment will be DENIED; (2) the Government's motion for summary judgment will be DENIED as to the Defendant's 1995 income tax liability; (3) the Government's motion for summary judgment will be GRANTED as to the Defendant's 1996 and 1997 income tax liability; (4) this Court will also GRANT summary judgment to the Government regarding the correctness of the Certificate of Assessment, penalties and accrued interest against the Defendant for the year 1995.

The sole issue remaining for the trier of fact in this case is whether the Government's action against Defendant for the reduction of his 1995 income tax liability was timely commenced. That issue turns exclusively upon whether the Defendant's Offer in Compromise was signed by an authorized I.R.S. agent, properly achieved "pending" status, and tolled the applicable statute of limitations.

An appropriate form of Order accompanies this memorandum.

Dated: September 23, 2008

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
